(No. 20283.—

THE PERRY COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(WALTER AYERS, Defendant in Error.)

*Opinion filed April 23, 1931.*

M. C. Young, (George W. Burton, of counsel,) for plaintiff in error.

Charles A. Karch, (James K. Moran, of counsel,) for defendant in error.

Mr. Commissioner Partlow reported this opinion:

On November 21, 1923, the Industrial Commission made an award in favor of defendant in error, Walter Ayers, against plaintiff in error, the Perry Coal Company, a corporation, on account of an injury to his spine, caused by being squeezed between a car and the face of the coal. The award found that defendant in error was wholly and permanently incapable of work, and he was allowed $14 per week for 285-5/7 weeks and a pension of $26.66⅔ per month for life, which award was confirmed by this court. (316 Ill. 27.) On September 19, 1927, plaintiff in error filed its petition under paragraph (f) of section 8 of the Compensation act, which petition set up the award and alleged that since it was made defendant in error had returned to work, and it prayed that the award be modified as provided by statute. Upon a hearing the Industrial Commission found that subsequent to the award defendant in error became able to and had returned to work, and it was ordered that all payments terminate as of the date on which the petition was filed. Upon a writ of *certiorari* the circuit court of St. Clair county set aside the order of the Industrial Commission, and the case comes to this court upon a writ of error.

The question is whether defendant in error was able to and did return to work. Under paragraph (f) of section 8, as amended in 1921, the employer is entitled to a review of an award for complete disability where it appears that the

employee is able to work although in a different kind of employment, and payments under the award will cease if it is shown that he earns as much as before he was injured, but if he does not earn as much as before he was injured the award will be modified. The employer is entitled to such review even though more than eighteen months have elapsed since the award was entered and although the award was entered nine months prior to the taking effect of the act of 1921, because the statute applies to the remedy or procedure and is retroactive. *Superior Coal Co.* v. *Industrial Com.* 321 Ill. 240.

The evidence shows that for about two years prior to the filing of this petition defendant in error had lived in Mascoutah, Illinois, where he ran a restaurant and a photograph gallery. He also ran a restaurant part of the time at Lebanon, Illinois, which is a short distance from Mascoutah. The witnesses called by plaintiff in error included E. R. Hagist, a merchant of Mascoutah, who ran a store directly across the street from the restaurant of defendant in error; Adolph Wetzel, a night watchman in the Hagist store; Jacob Ohl, who was the town marshal; Laurel Berthold, a Ford dealer; Edwin Hund, a wholesale baker and confectioner; Edgar Weil, a mine boss, and an investigator for the Burns Detective Agency. These witnesses testified that they had seen defendant in error working in and around the restaurant at different times and in different capacities. The restaurant was operated day and night, and the evidence shows that defendant in error was there at various hours during the day and night. The witnesses testified that he was the buyer for the restaurant; that they saw him sweeping the walk, waiting on the customers at the tables, working in the kitchen, serving at the counter, cleaning up in the morning at the end of the night's business and mopping the floor. One witness saw him dancing in the kitchen to music of a victrola. One witness saw him take photographs of an automobile wreck in the village, and

he carried the camera on his shoulder a distance of two blocks to and from the wreck. He also drove an automobile about the town.

Dr. A. B. McQuillan, a physician of East St. Louis, testified that he examined defendant in error on January 18, 1929. He went over him from head to foot and had X-ray pictures made. He testified that defendant in error came to him complaining principally of his spine, stating that he could not bend over or stoop and that he had fainting and dizzy spells. The witness testified that defendant in error had normal gait and bearing, except that in seating himself he held his spine very rigid. He was well nourished and apparently in good physical condition. His muscles were well developed and he had a good, fatty covering over his body. His temperature, pulse, heart, chest, abdomen, pelvis and the movement of the upper and lower extremities were normal. He had flat feet but apparently had no pain. The spinous processes were in line, without any point of tenderness or muscle spasm on pressure. The movements of the cervical vertebræ were normal. He testified that defendant in error refused to let him examine the mobility of his spine because he said it hurt him. The movements the doctor had him go through at the time caused no muscle spasm. The X-ray plates showed a healed fracture of the first lumbar vertebra. The doctor stated he could not tell whether it caused any disability because defendant in error refused to allow him to examine that part of his body. He found no pathology that would account for the dizziness except that his blood pressure was off, which he said was independent of any trauma. He testified that defendant in error was able to do almost any kind of light work and that he could operate or work around a restaurant and handle a tray of dishes. He testified that while he did not know the condition of the fractured vertebra except from observation and palpation, defendant in error had no muscle spasm, which is a manifestation of pain. If he had any

pain the doctor said he showed no clinical evidence of it, and that as a usual thing if a fracture is healed over there is no limitation of motion or function.

Defendant in error testified that since the award he had not done any work. He had attempted to run a photograph gallery but was unable to do so. He owned the restaurant and hired six people to work in it. He bought the goods, saw that the place was conducted in proper manner and did the intellectual work. He denied that he handled any trays, served any customers, removed dishes, except to hand a customer a knife or fork, a cup of coffee or something like that. He denied handling any dishes in the kitchen or working there. He testified that he had great trouble in walking and that when he exerted himself his spine gave him trouble. He said that he submitted to the examination of the physician until he pushed him forward to the extent he could not stand the pain. He denied that he carried the camera in question to take the picture but testified that it was done by an assistant. He admitted driving his automobile around town but that it was only occasionally that he drove it in traffic. He testified that he did about $1500 worth of business in his restaurant in the month of June.

The fact that an employee is not working does not necessarily mean, under the law, that he is totally and permanently disabled. (*Mt. Olive and Staunton Coal Co.* v. *Industrial Com.* 301 Ill. 521.) An employee is physically able to work when he can do so without seriously endangering his health or life. (*St. Louis and O'Fallon Coal Co.* v. *Industrial Com.* 321 Ill. 117; *Perkinson* v. *Industrial Com.* 305 id. 625; *Voight* v. *Industrial Com.* 297 id. 109.) In *Superior Coal Co.* v. *Industrial Com. supra,* the petition was filed under paragraph (*f*) of section 8 of the statute for the modification of the award. The evidence showed that the injured party after the award was selling cigars and soda in a soft drink parlor. He had done no manual

labor and testified that he could not do any lifting. When asked as to his physical ability to do work of the character which he was then doing, he replied that he felt good but that he could not exert himself. He testified that he was not doing as much work then as he was before he was injured and that he was not physically able to do any more work because it bothered him. It was held that working in a soft drink parlor and selling cigars and soft drinks in the manner which defendant in error testified he was doing was returning to work within the meaning of paragraph (f) of section 8 of the statute, and that while he was not earning as much as he earned before the injury the award should be modified.

In this case, notwithstanding the fact that defendant in error testifies that he is not able to and has not returned to work, the evidence shows that he has returned to work and is able to perform work of the character which he is now doing. There is ample evidence to sustain the finding of the Industrial Commission on this point and the circuit court was in error in reversing this finding. There is no evidence, however, in the record as to the amount which he is now earning by doing this work. The only evidence is that one month he did a gross business of $1500. This proof did not establish what he is now earning. The Industrial Commission cut off all payments. There is no evidence to justify such an order.

The judgment of the circuit court is reversed and the cause is remanded to that court, with directions to reverse the order of the commission and remand the cause to the commission with directions to hear further evidence.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*