MARIANO FRANKO *vs.* THE WILLIAM SCHOLLHORN COMPANY ET AL. (THE WILLIAM SCHOLLHORN COMPANY ET AL. APPEAL FROM COMPENSATION COMMISSIONER).

Third Judicial District, New Haven, June Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, JS.

Under our Workmen's Compensation Act, §§ 11, 12 (Rev. 1918, §§ 5351, 5352), an employee who receives an injury arising out of and in the course of his employment, consisting of a laceration of one of his fingers which prevents him from working at all for a time, is entitled to recover compensation for that disability, and if the finger is subsequently amputated as a result of the accident, he is also entitled to the specific indemnity provided in § 12 for the "loss" of that member, from the date of its amputation; for the two grounds of recovery prescribed in the statute, although attributable to the same primary cause, are separate and distinct.

Argued June 6th—decided July 23d, 1918.

APPEAL by the defendants from a finding and award of the Compensation Commissioner of the third dis-

trict in favor of the plaintiff, taken to and reserved by the Superior Court in New Haven County, *Case, J.,* for the advice of this court. *Judgment advised for plaintiff.*

The plaintiff and the defendant employer were subject to the provisions of Part B of Chapter 138 of the Public Acts of 1913, as amended by Chapter 288 of the Public Acts of 1915. The plaintiff, on February 7th, 1917, while in the employment of the defendant, suffered a laceration of the first finger of the right hand, which injury arose out of and in the course of his employment.

The average weekly wage of the plaintiff, computed in accordance with the terms of the Act, was $11. On March 13th, 1917, there was approved a voluntary agreement to pay plaintiff, on account of the said injury, $5.50 per week, beginning February 18th, and extending throughout the period of total incapacity. Compensation on account of said injury has been paid at the rate provided in this agreement, for about twenty-five and one third weeks.

Up to May 21st, the plaintiff was totally incapacitated as a result of this injury, and on said day, on account of this injury, it became necessary to amputate two phalanges of this finger.

The plaintiff claimed: first, that he was totally incapacitated from February 7th until May 21st, and that during that time he was entitled to compensation under § 11 as amended, as "compensation for total incapacity"; second, that on May 21st two phalanges of the index finger were removed, and that from that date he was entitled to twenty-five and one third weeks additional compensation under § 12 as amended, as "compensation for partial incapacity."

The defendant claimed that the compensation that could be awarded was that for twenty-five and one

third weeks, on the ground that the compensation for the loss of the phalanges of the finger was exclusive of all other compensation.

The Commissioner sustained the employee's claim 2, and also 1 as to the period from February 18th, and overruled the employer's claim; and awarded the employee, as compensation on account of said injury, $5.50 a week from February 18th to May 21st, 1917, for total incapacity, and at a like rate for the loss of the two phalanges of the index finger, beginning May 21st and extending for a period of twenty-five and one third weeks, after making due allowance for payments theretofore made.

*Philip Pond*, for the defendants.

*Eugene F. Farley* and *H. Frederick Day*, for the plaintiff.

WHEELER, J. The question for decision is one of statutory construction. Compensation Acts of other States differ as a rule from our Act in those provisions which affect the question at issue. Comparison of these with those of our Act will not aid us in the interpretation of our Act; and the decisions under these Acts will be of little help. The Acts of some States contain no similar provisions; the Acts of other States, such as Massachusetts and New Jersey, are so specific as to determine the point, while in many other States the question has not been the subject of decision.

The Commissioner in his memorandum gives an interesting resumé of the decisions of the courts and the rulings of the commissioners in other jurisdictions. From these it appears that in a majority of the jurisdictions where this question can arise, their Compen-

sation Acts award compensation, in cases such as this, for the total incapacity suffered as well as for the loss of a member.

New York and Michigan appear to hold that the compensation awarded under their Acts is for disability, not for loss or impairment of earning power. Our own Act, as we shall point out, is based upon a different theory.

A review of these Acts, decisions and rulings, would furnish little aid in solving our problem, nor is it necessary; for, as we read our Act, §§ 11 and 12 (Rev. 1918, §§ 5351, 5352), which alone concern this question, are reasonably clear.

Our Act in its original form, and as amended in 1915 and 1917, provides compensation for both total and partial incapacity resulting from injuries which do not prove fatal. Section 11 (Rev. 1918, § 5351) relates to total incapacity, and provides that the loss of sight, the loss or paralysis of certain physical members, and incurable imbecility or insanity, resulting from the accident, shall be "considered as causing total incapacity"; and for these and all other injuries resulting in total incapacity to work, there shall be paid to the injured employee weekly, during such incapacity, compensation equal to half of his average weekly earnings at the time of the injury, with a maximum and minimum limitation of the period of compensation. The obvious theory of this section is that the compensation is dependent upon the loss or impairment of earning power, and is to be borne by the employer and employee. The total incapacity may be permanent or temporary, but while it lasts the suffering employee is entitled to compensation for the prescribed period and upon the named scale.

Section 12 (Rev. 1918, § 5352) provides that in cases of injury resulting in partial incapacity, there shall be

paid to the injured employee a weekly compensation, during such incapacity, equal to half the difference between his average weekly earnings before the injury and the amount he is able to earn thereafter, with a maximum and minimum limitation of the amount and a limitation of the period of its continuance. The theory of this section is the same as that of § 11 (Rev. 1918, §5351): that the compensation is based upon loss of earning power, and that this loss is to be shared by employer and employee.

If these were the only injuries resulting in partial incapacity, it must follow that all such were included in its terms, and that permanent, as well as temporary, partial incapacity, was included. Following this designation in § 12, as amended in 1915 (Rev. 1918, § 5352), is the provision that, in certain specified injuries, the compensation for the loss, "in lieu of all other payments," shall be half of the average weekly earnings of the injured employee prior to such injury for the term specified in each described injury, but in no case more than $10 nor less than $5 weekly. Public Acts of 1915, Chap. 288, § 8 (Rev. 1918, § 5352). There is no other section of the Act which relates to injuries resulting in partial incapacity. The specific instances in which the compensation is definitely fixed are instances falling under the head of partial incapacity. Both the terms and context indicate that the entire section relates to instances of injuries resulting in partial incapacity. We cannot agree with the employer, that since the loss from February 18th to May 21st was the loss of the use of the two phalanges, and from May 21st the loss of the two phalanges themselves, the injury was a single one.

These two sections provide for compensation in the case of certain named injuries resulting in the loss of a member or function. The word "loss" is used in

the sense of deprivation. It designates the handicap under which the employee will suffer in the future. Compensation is based upon this loss. It is not measured, as are the other injuries resulting in partial incapacity, by impairment of earning power. Each class of injuries results in partial incapacity, but the compensation for each is based upon a different theory. To support the employer's contention, "loss," in some cases, must be construed to mean disability, and in other cases disability plus deprivation. These two classes are distinct classes of partial incapacity. There is no reason why an injury under each class should not be compensated; and if the injuries in question be, as the employer insists, the loss of the use of the two phalanges and the loss of the two phalanges, these are two independent injuries, for each of which compensation is provided, measured as to amount and duration. The loss of two phalanges carries a named compensation, and the loss of the use of two phalanges also carries a similar compensation. There is nothing in the Act which prevents compensation for any number of the several injuries specifically provided for. Payment for one does not pay for any but the one injury; and if there has been a partial incapacity followed by the loss of a member, there is nothing in the Act which forbids the award of compensation for each. Whether the loss of the member follows an injury to the member resulting in a loss of its use, or follows an injury to some other member, is quite immaterial; the injuries are equally distinct.

The argument of the employer relies, to a large extent, upon that part of § 12 (Rev. 1918, § 5352) which provides that the compensation for the named injuries shall be "in lieu of all other payments." This refers to payments for the named injuries: as to these the compensation designated is exclusive. But this does not limit

an award to one for the named injuries; nor does it purport to be in lieu of payments made for injuries resulting in partial incapacity which are not included among those named. And since these are a distinct class of injuries resulting in partial incapacity, the compensation provided for these specific injuries cannot and does not cover them. It is exclusive of any other payment by way of compensation for the injuries specifically designated, but for those only.

The Commissioner has stated correctly, we think, the legislative purpose in fixing a definite compensation in these cases, as an attempt to avoid unnecessary questions and hearings for the trier which would otherwise have resulted. If we look at the practical results of adherence to the defendant's interpretation of § 11 (Rev. 1918, 5351), we shall see that its enforcement would result in the gravest injustice to the employee. The loss of some member may cause a total incapacity of far less duration than the period of compensation given by the statute. In a few weeks he will be ready for work, but his handicap is constant and for life. The handicap determines the loss. But when the loss of the member is preceded by a long incapacity while efforts are made to heal and cure the injury, the injured employee has suffered far more than from the mere loss of the member. Compensation for the loss of the member will not compensate him for the period of incapacity preceding the loss of the member. The just rule of compensation will give compensation for the period of total incapacity as well as for the loss of the member.

Our Act is uniformly fair in its theory of compensation. We cannot assume a legislative intent in these instances of partial incapacity at variance with this theory. Under the employer's theory, if the payments for the total incapacity preceding the loss of the

member exceeded that provided for the loss of the member, the employee must return the excess and go without compensation for the larger part of his loss. We do not need to multiply these instances.

If the theory of these sections of our Act be disability, as the defendant insists, it is impossible to justify awards for specific injury, which in many cases will be far less than the incapacity preceding the loss of a member. If the theory of compensation for the loss of a member is because of the handicap resulting from the loss, it is at once logical and understandable, and in no wise conflicts with the award of compensation for incapacity antedating this loss.

Judgment advised in accordance with foregoing opinion dismissing the appeal.

In this opinion the other judges concurred.