## Gardner Orvis v. Marshall Hutchins d.b.a. Hutchins Bobbin Co. et al

[179 A.2d 470]

January Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 7, 1962

*Bloomer & Bloomer* for the claimant.

*A. Pearley Feen* for the defendants.

**Holden, J.** This is an appeal from an order of the Commissioner of Industrial Relations. The question is whether an award for permanent partial disability arising from an injury covered by 21 V.S.A. §648 should be reduced by the indefinite and unscheduled benefits previously awarded for partial disability under 21 V.S.A. §646.

The facts of this controversy were stipulated without a hearing.

The claimant was injured on December 20, 1957, in the course of his employment by the defendant Bobbin Company. As a result of his injury he was totally disabled for a period of 70 weeks. During this time the defendant insurance company paid him compensation for temporary total disability at the agreed rate of $38.00 a week. The total amount paid in this category was $2,667.60. The total disability payments included $2.00 a week for each of four minor dependent children.

Following the period of total disability the claimant was partially disabled. By a filed agreement the defendant insurance carrier paid

compensation to the claimant for partial disability at the rate of $18.00 a week for a period of 43 weeks, a total of $774.40. It further appears in the agreed facts that the claimant's permanent disability is established at twenty-seven and one-half per cent with benefits payable for a period of ninety and three-fourths weeks.

On the facts agreed to the commissioner reached several conclusions of law. The gist of the legal conclusions is that awards for temporary total disability, a temporary partial disability and permanent partial disability are separately compensable with the period specified for each accumulating a total of two hundred three and three-fourths weeks.

Accordingly, the order directs that the award for permanent partial disability be paid to the claimant "beginning at the end of his temporary partial disability." The defendants' appeal centers on this point. The defendants contend that the award for temporary partial disability should be credited against the compensation allowed for permanent disability.

The stipulated findings, legal conclusions of the commissioner and his order have been certified to this Court as provided in 21 V.S.A. §672 and Supreme Court Rule 19. The outcome involves the application of these sections of the Workmen's Compensation Law.

21 V.S.A. §642. **Total disability, benefits**—"Where the injury causes total disability for work, the employer during such disability, . . . shall pay the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of the average weekly wages . . ."

21 V.S.A. §643. **Period of payments**—"Payments shall not continue after such disability ends, nor longer than three hundred and thirty weeks. In case the total disability begins after a period of partial disability, the period of partial disability shall be deducted from such total period of three hundred and thirty weeks."

21 V.S.A. §646. **Partial disability, benefits**—"Where the disability for work resulting from an injury is partial, the employer, during such disability and beginning on the eighth day thereof, shall pay the injured employee a weekly compensation equal to half the difference between his average weekly wage before the injury and the average weekly wage which he will probably be able to earn thereafter, but not more than $18.00 a week."

21 V.S.A. §647. **Period of payment**—"Payment shall not continue after such disability ends nor longer than three hundred and thirty weeks, and in case the partial disability begins after a period of total disability, the period of total disability shall be deducted from such total period of three hundred and thirty weeks."

21 V.S.A. §648. **Special benefits**—"In case of the following injuries, the compensation shall be paid during total disability, as provided in sections 642 and 643 of this title, and at the termination of the total disability occasioned by such injuries the employer shall pay to the injured employee sixty-six and two-thirds per cent of the average weekly wages, for the periods stated against such injuries respectively, but in no case to exceed the period of three hundred and thirty weeks, which compensation shall be in lieu of all other benefits except those provided in sections 640 and 641 of this title."

Sections 640 and 641 relate to medical benefits. Then follow nineteen subsections constituting a list of specific injuries and the particular periods of weekly compensation prescribed for each. The claimant's injury is not one of the particular injuries specified. However it is compensable under the provisions of subsection (20), providing "In the event an employee shall receive an injury which results in the permanent impairment of any physical function not herein specifically mentioned, the commissioner of industrial relations shall determine the percentage of loss and award compensation accordingly; . . ."

The defendants concede that payments for temporary incapacity provided in section 642 are to be computed and awarded independently of awards for permanent partial disability. However, the defendants contend that awards for temporary partial disability under section 646 are encompassed by the benefits afforded for permanent partial disability as set forth in section 648. The construction sought by the defendants would integrate the two sections relating to partial disability in such a way that payments under one would operate to satisfy in whole or in part, liability arising from the other.

In the original enactment of our Workmen's Compensation Act in 1915, partial disability, in both its temporary and permanent sense, were combined within a single section. 1915, No. 164, §16. At the next session of the General Assembly the so-called schedule payments

for permanent partial disability were separated from the provisions concerning partial disability in general, by way of two distinct enactments. 1917, No. 174 §3; 1917, No. 175, §3. The two provisions have remained independent in arrangement since that time. This, coupled with the fact that different rates of compensation apply to temporary, as distinguished from partial, disability confirm the commissioner's view that two distinct elements of compensation are involved.

First, there is permanent disability in the medical or physical sense resulting from the loss of a member or permanent impairment of a particular physical function. The statute recognizes this concept and expressly mentions it by way of specific benefits for scheduled injuries in 21 V.S.A. §648. The award for permanent incapacity looks to the future to compensate for the probable reduction in earning power that will attend the employee for the remainder of his working life.

The second factor in compensable disability is concerned with the immediate or present loss of wages during the period of physical recovery, whether such recovery be complete or partial. *Roller* v. *Warren*, 98 Vt. 514, 519, 129 Atl. 168. Thus there may arise four different compensable situations: (a) temporary total, (b) temporary partial, (c) permanent total, (d) permanent partial. 2 Larson, Workmen's Compensation Law, §57.31 (1952). See also, *Alaska Industrial Board* v. *Chugach Electric Association*, 356 U. S. 320, 78 S. Ct. 735, 2 L.Ed.2d, 795, 797; *Gorman* v. *Atlantic & Gulf Co.*, 178 Md. 71, 12 A.2d 525, 527.

Our enactment maintains the distinction between permanent disability awards for scheduled injuries and compensation provided for present loss of wages incident to temporary incapacity during the healing period. The words "disability for work" employed in sections 642 and 646 refer to present earning capacity. The language employed conveys a different legislative meaning and purpose than the permanent disability resulting from the scheduled injuries specified in section 648. As to section 648, "our statute has arbitrarily fixed the amount of compensation to be paid for scheduled specific injuries regardless of loss of present earning power." *Beane* v. *Vt. Marble Co.*, 115 Vt. 142, 145, 52 A.2d 784.

To reduce the compensation allocated for future impairment of bodily function by compensation paid for wages already lost confuses

the different objectives that underlie the separate sections. The defendant, however, urges this result is demanded by the provision that the employer shall pay the scheduled benefits specified "at the termination of the total disability."

This language of the section is not to be rigidly applied if the result will defeat the plain purpose and plan of the Workmen's Compensation Act. Rather, it "is to be construed liberally to accomplish the humane purpose for which it was passed." The period of temporary disability does not necessarily have to be continuous nor is it required to immediately follow the injury. *Wilkins* v. *Blanchard-McDonald Lumber Co.,* 115 Vt. 89, 92, 52 A.2d 781. (Opinion by Moulton, C. J.)

The statute relating to scheduled benefits has arbitrarily fixed the amount of compensation to be paid. The award specified for permanent partial disability is not subject to any conditions or qualifications concerning temporary total loss of earning power. *Beane* v. *Vermont Marble Company, supra,* 115 Vt. at 145. By the same token, we think it should not be cut down by the period of temporary partial disability. *Costello* v. *Seamless Rubber Co.,* 99 Conn. 545, 122 Atl. 79.

The result sought by the defendants is not aided by the words "shall be in lieu of all other benefits except those provided in sections 640 and 641 . . . ." We construe this language to refer to the maximum limitation of three hundred thirty weeks which immediately precedes it. Thus the combination of temporary and permanent disabilities shall "in no case exceed the period of three hundred thirty weeks, which compensation shall be in lieu of all other benefits" except those relating to medical and surgical expenses.

The provision is not intended to exclude compensation for temporary total or partial disability when temporary disability is regarded as distinct and separate from the ensuing permanent disability for which allowance is made as a schedule injury. This is the result reached by similar wording in the Connecticut statute. *Franko* v. *William Schollhorn Co.,* 93 Conn. 13, 104 Atl. 485, 487; *Panico* v. *Sperry Engineering Co.,* 113 Conn. 707, 156 Atl. 802, 805; *Costello* v. *Seamless Rubber Co., supra,* 122 Atl. at 80. See also, 58 Am. Jur. Workmen's Compensation, §§293, 294; 88 A.L.R. 385.

■ When an injury produces both temporary and permanent disabilities the critical inquiry is to ascertain in point of time when the temporary aspect of the workmen's incapacity comes to an end. Temporary as distinguished from permanent disability is a condition of reduced earning power that exists until the injured workman is as far restored as the permanent character of his injuries will permit. It is measured by the duration of the healing period. *Western Cartridge Co.* v. *Industrial Commission*, 357 Ill. 29, 191 N.E. 213, 214. Thus the question is this. Has the injury reached its end result? If so, the case is ripe for the commencement of the schedule benefits.

■ In order to justify weekly compensation for temporary partial disability to continue, it must appear from the facts presented that the claimant, though able to earn some wages, has not regained full earning power and that he is still in the process of physical recovery. When maximum earning power has been restored or the recovery process ended, the temporary aspect of the workman's disability is concluded. The permanent residue of lost earning power and physical impairment attributable to the injury are compensable only under the scheduled benefits provided in section 648.

■ The order in this case correctly directs that the scheduled benefits are to begin at the end of the claimant's temporary partial disability. The inherent difficulty with this directive is that the agreed facts upon which the order is based fail to establish when, in point of time, the claimant was as far restored in health or earning power as his injury would permit. The agreed facts tell us merely that he was compensated for partial disability at the temporary rate for a period of forty-three weeks. If actual temporary partial incapacity was concluded during this period the defendant is entitled to a credit for compensation paid after the temporary disability was terminated. If the termination coincides with the end of the forty-three week period, no adjustment is required. In any event, the essential finding as to the date when temporary partial disability ended should be established in the findings. *San Martin* v. *Rock & Sons Co.*, 106 Vt. 301, 302, 310, 172 Atl. 635; *Wilkins* v. *Blanchard-McDonald Lumber Co., supra,* 115 Vt. at 93.

*The award is affirmed, and the cause remanded to the Commissioner of Industrial Relations with direction that he ascertain and re-*

*port the date when temporary partial disability ended, upon which payments for specific benefits under 21 V.S.A. §648, (20), are to commence, and amend his award accordingly. To be certified.*

**Hulburd, C. J.,** dissenting. The majority hold that the order of the commissioner "correctly directs that the scheduled benefits are to begin at the end of the claimant's temporary partial disability." But the statute provides that such benefits start "at the termination of the total disability" and that these benefits "shall be in lieu of all other benefits except . . ." certain benefits not here involved. Try as I may, I cannot bring myself to defy the statute in the name of being liberal or humane. Whatever virtue may arise from being liberal, I feel sure that it is less than that from being fair-minded. I do not believe that I am at liberty to act in a way contrary to the express wording of the statute. I do not question but that a legislature might reasonably set up a system such as is contemplated by the majority opinion. However a legislature might with equal reasonableness have designed a workmen's compensation plan under which all pyramiding of benefits is prevented. See 58 Am. Jur. Workmen's Compensation, §293. It seems to me that the express language of our act can only be taken as having been intended to effect just such a purpose. When one is confronted with the statutory expression "at the termination of the total disability occasioned by such injuries," it is a fair question to ask: What are these words doing there? The majority opinion does not satisfactorily account for their presence. The language is not consistent with their holding.

I can conceive of a case where a workman suffers, first, total disability, then partial disability, then by reason of a relapse, a further period of total disability, followed by a permanent state of partial disability or impairment. In such circumstances, I would have no difficulty in holding that compensation for permanent partial impairment should begin from the later period of total disability with no reduction therefrom by reason of the first period of temporary disability. I agree that from the record before us we are unable to say what the true factual situation may be. Since the record fails to disclose anything of the sort suggested, the commissioner's order, in my opinion, cannot be sustained under the statute. Compare, *Birmingham* v. *Lehigh & Wilkes-Barre Coal Co.,* N.J., 95 Atl. 242; *Kennecott Copper Corp.* v. *Industrial Comm'n,* 62 Ariz. 516, 158 P.2d 887.

The Connecticut cases cited by the majority do not have to contend with a statute containing the language which ours does. For that reason, they lend no authority whatever for rejecting the clear language of our statute. I find no case which goes so far as to hold contrary to the provisions of the statute. See Workmen's Compensation: Half Century of Judicial Development (Sec. G-6) by Samuel B. Horovitz, Nebraska Law Review, Vol. 41, December 1961. I am of the opinion that the commissioner's order is repugnant to the controlling statute and should, therefore, be reversed.